UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FOSTER SHANE GAINES,

        Petitioner,

v.

                                  Civil No. 2:24cv593
                                  Criminal No. 2:18cr143

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on Foster Shane Gaines' ("Petitioner") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF Nos. 252, 256, 268. The Government filed a brief in opposition to Petitioner's § 2255 motion arguing that all of Petitioner's claims improperly sought to relitigate issues previously decided on direct appeal. ECF No. 275, at 25. Petitioner did not file a reply brief, and the time for doing so has expired. For the reasons explained below, Petitioner's § 2255 motion is **DENIED**.

## I. BACKGROUND

The Government spends nearly 22 pages of its 27-page opposition brief detailing the unusually lengthy "Factual and Procedural Background" of Petitioner's case. ECF No. 275, at 1-23. Petitioner does not challenge this account, which is hereby incorporated by reference into this Opinion and Order. For ease

of reference, the Court recounts only those facts most directly relevant to Petitioner's § 2255 claims.

In September 2018, Petitioner was charged with four felony counts arising out of criminal conspiracies to engage in drug trafficking and sex trafficking of a minor, which he facilitated using contraband cell phones while incarcerated in California. ECF No. 3.  Petitioner was appointed counsel and his jury trial was scheduled for February 2019.  However, after new counsel was retained and a continuance was requested, the trial was rescheduled for November 2019.  ECF Nos. 67, 73.

A plea hearing was scheduled for August 23, 2019, but later rescheduled for August 28, 2019.  On August 28, 2019, retained counsel announced at the outset of the hearing that Petitioner was not yet prepared to enter a guilty plea, though counsel assured the Court that negotiations were ongoing and fruitful.  ECF No. 195, at 2-3.  The presiding judge[1] reminded Petitioner of his right to proceed to trial if he chose to do so, indicated that she remained ready to begin the trial as scheduled, and advised that she did not want to conduct another plea hearing unless Petitioner was "a hundred percent certain that [he] want[s] to plead guilty and not go to trial."  Id. at 4-5.

---

[1] Another judge of this Court handled Petitioner's case through sentencing; Petitioner's § 2255 motion was later transferred to the undersigned judge.

2

Three weeks after the hearing, a superseding indictment was returned.  ECF No. 109.  On October 11, 2019, Petitioner appeared before the Court and pled guilty to two counts of the superseding indictment.  ECF No. 113.  As set forth in the written plea agreement, Petitioner faced a mandatory minimum of ten years' imprisonment and a maximum of life imprisonment, but pursuant to a sentencing stipulation, the Government agreed to recommend a sentence "not to exceed 300 months."  ECF No. 114, at 1-2, 4.

On December 6, 2019, the Court received a letter from Petitioner indicating that he wanted to withdraw his guilty plea; that his lawyer had persuaded him to plead guilty by misleading him; that he was not guilty of the crimes to which he had pled; and that he wanted a new lawyer.  ECF No. 123.  Petitioner filed additional pro se letters making similar representations.  The Court then instructed retained counsel to file a "status report," after which counsel also filed a motion to continue sentencing and a request for a status conference.  ECF Nos. 132-34.  In the written memo in support of the motion to continue, retained counsel explained certain details of the representation and revealed his unwavering advice that it was imprudent for Petitioner to attempt to withdraw his guilty plea.  ECF No. 135, at 4-6.  In counsel's view, under the applicable law, even attempting to withdraw the guilty plea could relieve the Government of its obligation to request a sentence of not more than 300 months.  Id. at 7-8.

3

At a hearing on February 24, 2020, the Court converted the matter into a request to withdraw as counsel due to a breakdown in communication.  ECF No. 196, at 11-12.  Petitioner confirmed on the record that he stood by his letters and that retained counsel continued to advise him against plea withdrawal.  Id. at 13-14. Counsel for the Government opined that Petitioner was "simply trying to get out of the [plea] agreement" and argued that all of his new factual statements that conflicted with his prior sworn statements were "simply not credible."  Id. at 16-17.

The Court recognized a "conflict," granted the motion to withdraw, and appointed new counsel (hereinafter, "appointed counsel").  Less than two weeks later, appointed counsel stated in a motion to continue that Petitioner had decided to maintain his guilty plea.  ECF No. 140.  Attached to the motion was a "Declaration," signed by both Petitioner and his newly appointed "conflict free" counsel, stating that after consultations with his new lawyer, Petitioner wished to withdraw his prior efforts to challenge his guilty plea and "maintain the pleas previously submitted and proceed to sentencing in this matter."[2]  ECF No. 140-1.  The Court granted the motion to continue to allow appointed counsel time to prepare for sentencing.  ECF No. 141.

---

[2] Petitioner later claimed that he was so sick at the time his newly appointed counsel met with him to discuss and sign the Declaration that he did not understand what he was signing.  ECF No. 198, at 20.

4

Three months later, in advance of the rescheduled sentencing hearing, a preliminary Presentence Investigation Report ("PSR") was filed in the case; it calculated Petitioner's advisory Guidelines range as "life" imprisonment. ECF No. 144, at 67. Two weeks after the preliminary PSR was filed, appointed counsel filed a new motion to withdraw Petitioner's October 2019 guilty plea, stating that Petitioner had "expressly directed" him to file such motion. ECF No. 145, at 1. The Government filed an opposition brief, and the Court thereafter denied the motion. ECF Nos. 149, 150. Petitioner filed additional <u>pro</u> <u>se</u> letters again attacking his guilty plea, and appointed counsel filed a motion seeking reconsideration on Petitioner's behalf. ECF Nos. 151, 153, 153-1, 153-2.[3] Sentencing was again continued, and on January 21, 2021, the Court heard sworn testimony from Petitioner and from one other witness. ECF No. 198, at 9-26.

After the January 2021 hearing, the Court issued a written order denying the reconsideration motion. ECF No. 167, at 3-4, 8, 11 (recounting the court's prior findings that "Defendant's claims that he had been pressured into signing the plea agreement by [retained counsel] were not credible" and concluding that "Mr. Gaines has offered no evidence that his plea was not knowing or

---

[3] Petitioner's newly appointed counsel, his third lawyer in this case, also filed a motion seeking appointment of a <u>fourth</u> lawyer because Petitioner again believed that his lawyer was not adequately defending him. ECF No. 154. This motion was denied by the district court after finding "no basis" to permit withdrawal. ECF No. 167, at 15.

voluntary or that he is legally innocent"). The Court explained that Petitioner's prior issues with retained counsel "arose primarily after Mr. Gaines entered into his Plea Agreement" and noted that, at the plea hearing, Petitioner "confirmed that he was satisfied with [retained counsel's] representation of him related to the Plea Agreement." ECF No. 167, at 12. Accordingly, the Court found that Petitioner's "new assertions that [retained counsel] pressured him into accepting the plea agreement are not credible." Id. (emphasis added).

On April 15, 2021, Petitioner appeared for his sentencing hearing, at which the Government requested a sentence of 300 months. ECF No. 197, at 36, 38. After reviewing the statutory sentencing factors, the Court noted that the Guidelines' recommended sentence of "life" was arguably appropriate, and labeled the Government's request for only 300 months' imprisonment "a gift." Id. at 59. The Court went on to observe that the "only mitigation" in the record was Petitioner's consent to a virtual sentencing hearing amid the COVID pandemic. The Court ultimately imposed a sentence of 288 months' imprisonment. Id. at 59-60.

The Fourth Circuit affirmed Petitioner's conviction and sentence. United States v. Gaines, No. 21-4195, 2023 WL 5745367 (4th Cir. Sept. 6, 2023). In the Fourth Circuit's view, the district court had not abused its discretion in denying Petitioner's various efforts to withdraw his plea. Id. at *2.

6

The Fourth Circuit found that "the district court conducted a thorough Rule 11 colloquy, and Gaines's statements at the hearing that his plea was knowing and voluntary weigh[ed] heavily against his contrary assertions" in the months following his plea. Id. (emphasis added). The Court then rejected Petitioner's unsupported "claim of innocence" as "specious at best." Id. at *2-3. Finally, the Court rejected Petitioner's claim that he was too sick to understand the Declaration, indicating that misunderstanding the document was "an insufficient basis" to withdraw the plea, and that (1) Petitioner's claim of confusion had been deemed "not credible" by the district court and (2) the Fourth Circuit had "no reason to question the district court's credibility determination." Id.

Petitioner timely filed his § 2255 motion, which he later amended. ECF Nos. 252, 256, 268. The Government filed an opposition brief arguing that all of Petitioner's claims are improper attempts to relitigate the voluntariness of his guilty plea, a matter already addressed by the sentencing judge and the Fourth Circuit on a developed record that included Petitioner's own sworn testimony. ECF No. 275, at 15, 25. Petitioner did not file a reply.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge his sentence or conviction by moving the district court "to vacate, set aside or

correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must demonstrate that (1) his sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack." Id. A § 2255 motion is "expected to state facts that point to a real possibility" that one of these errors occurred; "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013); see also Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970) (permitting disposition without a hearing where the record "conclusively show[s] that the prisoner is entitled to no relief").

The right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentence, so the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised "during [the] initial criminal proceeding or on direct appeal." See United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023). In addition to the general bar on raising forfeited claims that were not previously raised, claims "already decided on direct appeal may not be relitigated via a § 2255

motion." United States v. Riggs, No. 2:10cr2, 2015 WL 7573242, at *2 (W.D. Va. Nov. 25, 2015) (citing Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)); see Dyess, 730 F.3d at 360 ("[I]t is well settled that [a petitioner] cannot circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." (cleaned up)).

Although procedural rules generally bar a petitioner from raising claims that were previously forfeited or previously adjudicated on direct appeal, a petitioner may properly assert that his counsel provided constitutionally ineffective assistance. See U.S. Const. amend. VI; Massaro v. United States, 538 U.S. 500, 504 (2003). "To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'" United States v. Cooper, 617 F.3d 307, 312 (4th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). A petitioner must prove an ineffective assistance claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

To satisfy the first Strickland prong a Petitioner must demonstrate that their lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable

9

professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that "the identified acts or omissions were outside the wide range of professionally competent assistance." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Importantly, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

To establish the second Strickland prong a petitioner must "affirmatively prove prejudice" through demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. When a petitioner claims ineffective assistance in connection with his entry of a guilty plea, the petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

10

### III. DISCUSSION

### A. Claim One – Involuntary Guilty Plea

### 1. Claim for Relief

Petitioner's first claim argues that his plea was involuntary because his retained lawyer pressured him into pleading guilty and would not help him withdraw his plea. ECF No. 268, at 4. Petitioner also argues, across his multiple submissions, that he is innocent of the crimes of conviction and does not deserve such a long sentence based on the lack of evidence against him. ECF No. 252, at 1-2; ECF No. 256, at 3.

In support of this claim, Petitioner attacks retained counsel's (legally accurate) advice that (1) Petitioner's conviction could be based solely on the testimony of cooperating witnesses and (2) Petitioner would risk a life sentence if he proceeded to trial and was convicted.[4] ECF No. 268, at 4. He also asserts that he maintained his innocence during all interactions with retained counsel, only pled guilty because he was "scared" and pressured to do so, and repeatedly told retained counsel that he wanted to withdraw his plea. Id. at 4, 13. Finally, Petitioner contends that appointed counsel misled him about the impact of the "Declaration." According to Petitioner,

---

[4] Petitioner also asserts within Claim One that retained counsel refused to timely file a motion to withdraw the guilty plea and revealed attorney client communications against Petitioner's interest. See, e.g., ECF No. 268, at 13. These allegations, which allege ineffective assistance, are considered in conjunction with Claim Two.

11

he was so sick when he signed the Declaration that he thought it was a demand for trial. Id. at 4.

### 2. Procedural Analysis

Petitioner's first claim for relief, or at least the bulk of it, appears to be procedurally improper because the issues were "already decided on direct appeal" and thus may not be "relitigated via a § 2255 motion." Riggs, 2015 WL 7573242, at *2 (citing Boeckenhaupt, 537 F.2d at 1183). As recounted above, the Fourth Circuit already considered Petitioner's challenges to the voluntariness of his plea, but found that Petitioner's sworn statements made during "a thorough Rule 11 colloquy" attesting to the voluntariness of his plea "weigh heavily against his [later] contrary assertions." Gaines, 2023 WL 5745367, at *2. Petitioner may not circumvent this ruling "on direct appeal by re-raising the same challenge in a § 2255 motion." Dyess, 730 F.3d at 360. Accordingly, for the reasons argued by the Government, ECF No. 275, at 25 & n.9, Petitioner's first § 2255 claim is **DENIED** to the extent it merely rehashes previously decided claims.

### 3. Alternative Merits Analysis

Even if Petitioner's first claim were procedurally proper, it would be denied on the merits. First, Petitioner fails to allege facts capable of demonstrating that his plea was involuntary. Tellingly, the judge who accepted Petitioner's plea was exceedingly careful in asking and re-asking questions to ensure

12

that Petitioner was pleading guilty voluntarily.  Petitioner swore under oath that no one, <u>including his counsel</u>, had pressured him to plead guilty, and his later claims that contradict these clear sworn statements are rejected as "patently frivolous or false." <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005).

Second, to the extent Petitioner asserts that he is factually innocent and counsel prevented him from withdrawing his plea, such claims fail to support § 2255 relief.  The well-developed record reveals that Petitioner's efforts to withdraw his plea were driven primarily by "buyer's remorse" or claimed confusion regarding the timing of a sentence reduction motion.  Neither of these is a <u>legitimate reason</u> to withdraw a guilty plea following a properly conducted Rule 11 colloquy.  See <u>Dingle v. Stevenson</u>, 840 F.3d 171, 174 (4th Cir. 2016) ("Pleading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse.").  Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a guilty plea can only be withdrawn when a defendant "can show a fair and just reason for requesting the withdrawal."  Importantly, the "adequacy of the plea colloquy in which the guilty plea was accepted is '[t]he most important consideration in resolving a motion to withdraw a guilty plea.'" <u>Gaines</u>, 2023 WL 5745367, at *2 (quoting <u>United States v. Nicholson</u>, 676 F.3d 376, 384 (4th Cir. 2012)).  Relevant factors also include:

13

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991); see United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009) (indicating that a defendant "bears a heavy burden of persuasion in showing that a fair and just reason exists" to permit withdrawal of a plea and that "a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn" (cleaned up)).

Here, even at this late stage, Petitioner does not offer credible evidence that his plea was involuntary or that he is innocent. Instead, he seeks to prove entitlement to § 2255 relief by claiming that he lied to the Court under oath about his guilt and about the absence of any "promises" made by retained counsel. See Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) ("Absent clear and convincing evidence to the contrary, [the defendant] is bound by the representations he made during the plea colloquy." (quotation marks omitted)).[5] Petitioner thus fails to offer any

---

[5] Petitioner asserted in his post-plea filings that retained counsel promised that he would receive only 8 years' imprisonment and that the government would file a sentence reduction motion at sentencing rather than sometime in the future. Both of these claims directly conflict with the following sworn testimony:

newly developed basis to deviate from the Fourth Circuit's prior finding that Petitioner's claims of innocence are "specious at best." <u>Gaines</u>, 2023 WL 5745367, at *2; <u>see</u> <u>United States v. Johnson</u>, No. 7:10cr93, 2011 WL 861109, at *1 (E.D.N.C. Mar. 9, 2011) (discussing the court's hesitancy to "allow a defendant to manipulate the Rule 11 process by asserting, in support of a motion to withdraw a guilty plea, that he lied under oath." (cleaned up)). Accordingly, even if Petitioner's challenges to the voluntariness of his plea or his guilt were procedurally proper, they would be **DENIED** on the merits.[6]

## B. Claim Two – Ineffective Assistance

### 1. Claim for Relief

Petitioner's second claim alleges ineffective assistance of counsel. Across his various filings, Petitioner raises multiple theories to support this claim. These theories assert that retained counsel was constitutionally deficient by failing to investigate, pressuring Petitioner to plead guilty, making false promises about sentencing, failing to timely move to withdraw

---

THE COURT: Has anybody, <u>including your attorney</u> and the Assistant United States Attorneys, made any promise of any leniency or promise of any kind in return for your pleas, other than what's in the plea agreement?
[Petitioner]: No.
ECF No. 142, at 34 (emphasis added).

[6] Petitioner's cursory challenge to the length of his sentence, which he contends is too long based on the quality of the Government's evidence, is summarily rejected as Petitioner's sentence, a substantial downward variance predicated on a defense-friendly stipulation, was plainly lawful.

Petitioner's guilty plea as instructed, and by revealing attorney-client confidences.  ECF No. 268, at 5, 14-17; ECF No. 252, at 1-2.  Petitioner separately asserts that appointed counsel was deficient for misleading Petitioner about the impact of the "Declaration."  ECF No. 256, at 3.

### 2. Procedural Analysis

The Government asserts that Petitioner's ineffective assistance arguments are barred because these matters were previously adjudicated on direct appeal.  ECF No. 275, at 25. Although the Government is correct that Petitioner raised many if not all of these arguments on direct appeal, ECF No. 275-1, at 12-20, the Fourth Circuit does not appear to have squarely addressed them as ineffective assistance claims.  Instead, the Fourth Circuit's analysis focused on whether the district court erred in denying Petitioner's multiple efforts to withdraw his guilty plea. Gaines, 2023 WL 5745367, at *1.  Accordingly, this Court addresses the ineffective assistance claims on the merits.  See Massaro, 538 U.S. at 504 ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

### 3. Merits

#### a. Pre-plea Conduct

The bulk of Petitioner's challenges to retained counsel's pre-plea conduct are easily rejected as they rely on new factual

allegations that <u>expressly contradict</u> Petitioner's prior sworn statements. <u>See</u> <u>Lemaster</u>, 403 F.3d at 221-22 (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion "that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false'"); <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Petitioner stated under oath and in open court that his lawyer had <u>not</u> made any promises other than what was contained in the written plea agreement. ECF No. 142, at 34. He further swore that nobody was "threatening" him or "forcing" him to plead guilty. <u>Id.</u> Next, Petitioner stated that he shared "all of the facts" of the case with retained counsel and that he was "fully satisfied" that retained counsel listened and "considered all of the facts" that he shared. <u>Id.</u> at 35. Petitioner also indicated that he was satisfied that his attorney discussed with him "any possible defenses" against the charges. <u>Id.</u> at 35-36.

Later in the plea hearing, Petitioner stated under oath that he was "guilty" of both counts, that he was pleading guilty "freely" and "voluntarily," and that he was doing so because he was "<u>in fact guilty</u> of those two counts." <u>Id.</u> at 45 (emphasis added). Shortly thereafter, Petitioner assured the Court that he had read the "statement of facts," discussed it with retained

counsel, "agree[d] with the statement of facts" and "want[ed] the Court to accept [the] statement of facts." Id. at 46-47.

At this point in the hearing, the Court expressed some concern that Petitioner was not looking directly at the Court when answering questions. Petitioner explained that he was "going through a lot emotionally." Id. at 47. Before accepting such explanation, the Court decided to "back up" and repeat multiple questions to ensure the voluntariness of the plea. Petitioner then reconfirmed that he wanted the Court to accept the statement of facts, wanted to plead guilty voluntarily, intelligently, and knowingly, and that "no one [was] forcing" him to plead guilty. Id. at 48.[7] With these sworn assurances and reassurances, the Court accepted the guilty plea and found Petitioner guilty. Id. at 49.

As a result of Petitioner's prior sworn statements, his current statements to the contrary are not credible. The sentencing judge reached this exact same conclusion. ECF No. 167, at 11-12. Additionally, based on the nature of Petitioner's § 2255 allegations, retained counsel's purported errors would have been

---

[7] This reconfirmation was actually the third time some of these questions were asked because there was a lengthy discussion about plea negotiations near the outset of the hearing, which revealed that Petitioner was pleading guilty to the most defense-friendly plea agreement offered in the case. ECF No. 142, at 14-16. At that time, Petitioner confirmed under oath that it was his "desire to accept the plea agreement" offered by the government and that he was doing so "freely," "voluntarily," and "intelligently." Id. at 18.

known to Petitioner at the time he pled guilty.[8]  With this knowledge, Petitioner freely elected to admit his guilt and assure the Court under oath that his lawyer had considered the case, the charges, the evidence, and any potential defenses.  He further assured and reassured the Court that he wanted to plead guilty and was doing so because he was guilty.  Petitioner's current claims of innocence and constitutionally deficient counsel cannot overcome these prior statements and actions.  Lemaster, 403 F.3d at 221; cf. United States v. Coleman, No. 5:20cr104, 2025 WL 2608665, at *6 (W.D.N.C. Sept. 9, 2025) ("[A] knowing and voluntary guilty plea 'forecloses federal collateral review' of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea." (quoting Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1294 (4th Cir. 1992))).  Accordingly, Petitioner fails to

---

[8] Petitioner asserts in his § 2255 filings that retained counsel failed to interview witnesses and failed to obtain records from the California jail that he contends would have proved his innocence. ECF No. 268, at 14-17. However, in a previous letter to the Court, Petitioner claimed that counsel did obtain the records from the jail, but still would not file a motion to withdraw the guilty plea. ECF No. 128, at 1. Even if retained counsel ignored Petitioner's urging to obtain documents or statements from the California jail's investigation into Petitioner's cell phone use, such omission does not demonstrate deficient performance in light of the federal government's independent investigation into the same conduct. This is particularly true given that the Government provided counsel with audio files and other inculpatory evidence as to the charged federal crimes during a reverse proffer session. ECF No. 142, at 43-44. Moreover, Petitioner fails to demonstrate that counsel's alleged omissions implicated the voluntariness of his plea, and thus, Petitioner's failure-to-investigate claim is waived by his admission of guilt and voluntary guilty plea. See United States v. Campa-Macias, 358 F. App'x 400, 401 (4th Cir. 2009) ("By pleading guilty [the defendant] has waived all antecedent non-jurisdictional defects . . . .").

demonstrate <u>constitutionally</u> deficient performance under <u>Strickland</u>.

Petitioner separately fails to show <u>Strickland</u> prejudice as he falls short of demonstrating a reasonable likelihood of a different outcome had retained counsel performed differently. Counsel ultimately secured such a favorable plea agreement that his 288 month sentence was labeled "a gift" by the sentencing judge, and Petitioner fails to demonstrate that an objectively reasonable person in his shoes would have proceeded to trial and risked a life sentence in the face of the inculpatory evidence outlined in the PSR. See <u>United States v. Fugit</u>, 703 F.3d 248, 260 (4th Cir. 2012) (explaining that a petitioner's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts"); <u>cf.</u> ECF No. 142, at 43-44 (reflecting retained counsel's view, after reviewing the Government's discovery during "a very helpful session where [he] could observe things" and "listen to audio tapes," that there were "no meritorious" pretrial or substantive trial defenses). The fact that Petitioner later indicated in the signed Declaration that he desired to proceed with this extremely beneficial plea bargain while being represented <u>by a new lawyer free of any purported conflict</u> only further underscores the reasonableness of retained counsel's performance and the absence of <u>Strickland</u> prejudice.

20

Accordingly, Petitioner's claim that retained counsel provided ineffective assistance prior to his plea is **DENIED**.

### b. Post-plea Conduct

### i. Retained Counsel

Petitioner challenges two aspects of retained counsel's post-plea conduct: (1) counsel's delay in filing a motion to withdraw the guilty plea; and (2) counsel's statements to the Court that were detrimental to Petitioner's efforts to withdraw his plea. Both challenges fail to state a viable § 2255 claim.

First, Petitioner fails to demonstrate that counsel's delay amounted to constitutionally deficient performance as the record clearly reveals that retained counsel acted based on his legal knowledge and firm belief that withdrawing the plea would greatly prejudice Petitioner. Retained counsel was strategically reasonable in resisting Petitioner's requests/instructions to file a motion to withdraw his plea as doing so facilitated counsel's repeated attempts to convince Petitioner not to follow such self-destructive course. See United States v. Rivernider, 828 F.3d 91, 108 (2d Cir. 2016) (distinguishing a defendant's fundamental right to decide "whether to plead guilty or proceed to trial" from the power to decide "whether to seek to withdraw a guilty plea" that was already entered and accepted, explaining that the existence of "sufficient legal grounds" to withdraw a plea "is a legal question, on which counsel's professional expertise must be brought to

21

bear"); <u>McAllister v. United States</u>, No. 7:06cr44, 2012 WL 4801521, at *5 (E.D.N.C. Oct. 9, 2012) (noting that even in the face of the defendant's instruction to seek to withdraw the plea, counsel's failure to file the motion "was not objectively unreasonable" as counsel cannot be ineffective for "failing to raise a meritless claim" (citation omitted)); <u>Ingram v. United States</u>, No. GJH-15-392, 2020 WL 1904700, at *4 (D. Md. Apr. 17, 2020) ("Because Petitioner has not provided the Court with a 'fair and just' reason that would have justified withdrawing his plea," it was not "objectively unreasonable for Petitioner's trial counsel to decline to file a motion to withdraw the guilty plea"). While it is true that retained counsel's strategic efforts to maintain the plea created a delay that had some negative impact on the plea withdrawal calculus, this negative side-effect does not undermine the constitutional reasonableness of counsel's actions. <u>Cf.</u> <u>Strickland</u>, 466 U.S. at 690 (discussing the exceedingly high bar that must be overcome to successfully challenge defense counsel's informed strategic decisions).

Alternatively, even if retained counsel erred by not filing a motion to withdraw the plea as soon as Petitioner requested it, Petitioner fails to demonstrate <u>Strickland</u> prejudice. Petitioner has not demonstrated, and nothing in the record developed after multiple hearings suggests, a "reasonable likelihood" that the Court would have granted the motion to withdraw the plea had it

been filed in November 2019 shortly after Petitioner first voiced his desire to withdraw his plea.

It is true that the sentencing judge and the Fourth Circuit viewed the two-month delay between the guilty plea and Petitioner's first pro se letter as a factor weighing against withdrawal. It is also true that by the time the motion was resolved, the Government had legitimate concerns about witness availability that weighed against withdrawal. However, the delays were only one part of the calculus, and even if retained counsel had acted very swiftly, the delay between the plea and the withdrawal request would still have been six weeks or longer. The Fourth Circuit has characterized a six-week delay as a "long" delay that does not favor a defendant. See Moore, 931 F.2d at 248 (indicating that the defendant "long delayed" filing his motion because he waited "six weeks before giving notice of his intent to move to withdraw his pleas"). Furthermore, this timing issue was grossly overshadowed by the fact that Petitioner had openly and freely admitted and readmitted his guilt at a properly conducted Rule 11 colloquy and wanted to withdraw his plea based primarily on a specious claim of actual innocence.[9] See Gaines, 2023 WL 5745367, at *2 (explaining that the adequacy of the Rule 11 hearing is the

_____

[9] To the extent that Petitioner contends that he sought to withdraw his plea due to counsel's alleged failure to adequately explain when certain sentence reduction avenues would become available, this argument is simply not a compelling basis for withdrawal regardless of whether it was made one day, one week, or six weeks after a properly conducted Rule 11 hearing.

most important factor and finding that the "district court conducted a thorough Rule 11 colloquy").

A defendant bears a heavy burden to demonstrate that he should be allowed to withdraw a guilty plea, Thompson-Riviere, 561 F.3d at 348, and the developed record here demonstrates that Petitioner never came close to doing so. Still today, Petitioner does not advance any new evidence of his innocence, and his efforts to withdraw his plea are predicated on the claim that he repeatedly lied under oath to the Court.

Second, Petitioner fails to demonstrate that counsel's decision to reveal attorney-client communications or make statements in support of the validity of the plea hearing constituted actionable ineffective assistance. Importantly, counsel was instructed by the Court to "file a status report addressing the concerns" that Petitioner raised in his letters seeking to withdraw his guilty plea. ECF No. 132, at 1. Retained counsel's written submissions and statements on the record at the February 2020 hearing complied with this Court order.[10] Moreover, much of what counsel revealed addressed why he believed that he was appropriately representing Petitioner and why he was still striving to convince Petitioner not to pursue withdrawing his plea; in fact, counsel even sought the Court's help in explaining the

---

[10] At the hearing, the Court converted retained counsel's filings into a motion to withdraw as counsel, making counsel's statements about his representation directly relevant to the motion ultimately decided.

law to Petitioner because he believed that withdrawal <u>would greatly prejudice Petitioner</u>. ECF No. 135; ECF No. 196, at 10-11. While the Court did find that retained counsel and Petitioner had a "conflict" that precluded counsel's continued representation, that conflict was resolved by the appointment of "conflict-free counsel" to represent Petitioner at a new plea withdrawal hearing. <u>United States v. Glover</u>, 8 F.4th 239, 249 (4th Cir. 2021); <u>Gaines</u>, 2023 WL 5745367, at *2.

Alternatively, even if retained counsel committed a constitutional error by making statements adverse to Petitioner's efforts to withdraw his plea, Petitioner fails to demonstrate resulting prejudice. For the reasons explained in detail herein, Petitioner has yet to identify a valid basis to withdraw his plea. That plea was accepted following a properly conducted colloquy, and as the Fourth Circuit has concluded, Petitioner's "claim of innocence is specious at best." <u>Gaines</u>, 2023 WL 5745367, at *2. Petitioner's failure to understand the "timing" of a motion that could reduce his sentence is not a valid basis to withdraw a plea, and Petitioner has failed to demonstrate at any stage of the case that he was tricked, induced, or pressured into pleading guilty.

### ii. Appointed Counsel

Petitioner separately challenges his appointed counsel's performance associated with the "Declaration" in which Petitioner confirmed his desire to maintain his guilty plea. Specifically,

25

Petitioner states that retained counsel "misled" him by telling him that the Declaration was an agreement to "continue to trial." ECF No. 256, at 3.  Petitioner claims that he was extremely sick when he signed the Declaration and thus overlooked the Declaration's clear statement that Petitioner "desire[d] to maintain the pleas previously submitted and proceed to sentencing in this matter."  ECF No. 140-1.

Petitioner's cursory allegation against his appointed counsel plainly fails to demonstrate either constitutionally deficient performance or resulting prejudice.  As to performance, this claim is undeveloped as Petitioner offers only the conclusory statement that he was misled and does not offer any facts explaining what counsel said or did to mislead him.  This "vague and conclusory" allegation is rejected without further analysis.  Dyess, 730 F.3d at 359.  As to prejudice, Petitioner fails to demonstrate Strickland prejudice because even assuming that counsel performed deficiently, Petitioner fails to demonstrate a reasonable likelihood that his efforts to withdraw the plea would have been successful had the declaration never been signed.

Petitioner's ineffective assistance claims against both his lawyers predicated on post-plea conduct are therefore **DENIED**.

### C. Claim Three – District Court Erred

Petitioner's filings also appear to claim that the district court erred by delaying its ruling on, and ultimately denying,

Petitioner's motion to withdraw his guilty plea. ECF No. 268, at 15-16. To the extent this claim was raised, squarely addressed, and denied on direct appeal, Petitioner is precluded from using § 2255 proceedings to re-raise it. Dyess, 730 F.3d at 360. To the extent this claim was not raised on direct appeal, it should have been, for it is a direct challenge to Petitioner's conviction. McKinney, 60 F.4th at 193. Either way, this claim is procedurally improper. Moreover, even if this claim was procedurally proper, it is meritless as Petitioner fails to demonstrate that the sentencing judge improperly delayed the resolution of the motion or that the district court's ultimate ruling was in error. For these reasons, Claim Three is **DENIED**.

## IV. CONCLUSION

For the reasons explained above, all three of Petitioner's § 2255 claims are **DENIED** on the merits.[11] ECF Nos. 252, 256, 268. Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

---

[11] The Court has fully considered all of Petitioner's arguments and sub-arguments across his various § 2255 filings, and notes that nothing in any of his § 2255 submissions, including matters not discussed in detail herein, support § 2255 relief.

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 20 , 2026

28